TIMOTHY S. ANDERSON, Ohio Bar No. 0071593
tanderson@littler.com
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH 44114
Telephone: 216.696.7600
Facsimile: 216.696.2038

MAGGY M. ATHANASIOUS, Bar No. 252137
mathanasious@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA 90067.3107
Telephone: 310.553.0308
Facsimile: 310.553.5583

ROBERT R. BALL, Bar No. 115410
RobBall@BoiseInc.com
1111 West Jefferson Street, Suite 200
Boise, ID 83799
Telephone: 208.384.7742

Attorneys for Defendants
THARCO PACKAGING, INC., THARCO CONTAINERS, INC., AND BOISE PAPER HOLDINGS, L.L.C.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARLAND WILFONG,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THARCO PACKAGING, INC., THARCO CONTAINERS, INC., BOISE PAPER HOLDINGS, LLC, and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | Case No. 2:14-CV-04583 R(MRWx)<br><br>**ASSIGNED FOR ALL PURPOSES TO JUDGE MANUEL L. REAL**<br><br>**FINDINGS OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** |

LITTLER MENDELSON, P.C.
1100 Superior Avenue
20th Floor
Cleveland, OH 44114
216.696.7600

FINDINGS OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARLAND WILFONG,<br><br>   Plaintiff,<br><br>v.<br><br>THARCO PACKAGING, INC., THARCO CONTAINERS, INC., BOISE PAPER HOLDINGS, LLC, and DOES 1 through 10, inclusive,<br><br>   Defendants. | Case No. 2:14-CV-04583 R(MRWx)<br><br>**ASSIGNED FOR ALL PURPOSES TO JUDGE MANUEL L. REAL**<br><br>**FINDINGS OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** |

LITTLER MENDELSON, P.C.
1100 Superior Avenue
20th Floor
Cleveland, OH 44114
216.696.7600

FINDINGS OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

In accordance with Rule 56 of the Federal Rules of Civil Procedure, the Motion for Summary Judgment, or in the Alternative, Summary Adjudication of Issues ("Motion") of Defendants Tharco Packaging, Inc., Tharco Containers, Inc., and Boise Paper Holdings, L.L.C. ("Tharco") came on regularly for hearing on February 2, 2015 at 10:00 a.m. in Courtroom 8, the Honorable Manuel L. Real, United States District Court Judge, presiding.

The Court, having considered the points and authorities submitted by the parties, the declarations and exhibits thereto, the relevant pleadings and papers on file with the Court and having heard the oral argument or counsel thereon, and having fully considered the law and facts disclosed by this record, hereby makes the following findings of uncontroverted facts and conclusions of law:

## STATEMENT OF UNCONTROVERTED FACTS

1. Plaintiff began working for one of Tharco's predecessors on April 11, 1978. At the time of his termination, Plaintiff worked at Tharco's plant in Santa Fe Springs where the company manufactures cardboard boxes.

2. Plaintiff worked as a Flexo Operator for the bulk of his employment with Tharco. As a Flexo Operator, Plaintiff operated a Flexo machine that prints, folds, and glues cardboard sheets into boxes.

3. After Boise Inc. acquired Tharco on March 1, 2011, it placed great emphasis on safety in the workplace, especially with respect to its lockout/tagout ("LOTO") policy. Plaintiff received training on Tharco's LOTO policy at least twice per year provided by supervisors who explained the policy and provided Plaintiff with copies of it. As part of his training, Plaintiff learned that the company required him to lock out and tag out a machine anytime he came into contact with any part of it that could cause injury when the machine was energized.

4. Despite his training, Plaintiff received a final warning for a LOTO violation on November 20, 2012. Plaintiff removed an electrical panel and tried to repair a machine while it was energized despite being told by supervision to wait for

2.

LITTLER MENDELSON, P.C.
1100 Superior Avenue
20th Floor
Cleveland, OH 44114
216.696.7600

FINDINGS OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

maintenance to repair the dial. The final warning stated that "[a]ny further violations of the Lock Out Tag Out Policy within the next five years will result in termination of your employment."

5. On July 15, 2013, during a fifteen minute rest break, Plaintiff lay down on a bundle conveyor to relieve stress in his back and legs. Plaintiff did not ask for permission to lie on the machine, nor did he ask anyone if he could lie elsewhere in the facility.

6. Plaintiff lay on spinning metal rollers at the end of the conveyor, which used a powered belt to move cardboard sheets onto the rollers. The rollers are approximately 72 inches long, 30 inches wide, and 40 inches off of a concrete floor, albeit with a rubber mat on one side.

7. Plaintiff turned the conveyor off before lying on it, but he did not lock it out or tag it out, despite the fact that he could have done so in three different locations. Before lying down, Plaintiff placed a sheet of cardboard on top of the rollers, and he lay his head on a rolled up piece of cardboard paper.

8. Plaintiff claims he was not sleeping on the conveyor, but admits he closed his eyes and "was in la-la land."

9. As Plaintiff lay on the machine, three supervisors approached and tapped him multiple times to get his attention. When Plaintiff opened his eyes, his supervisor, Blas Torres, told him that he needed to get up and go to the lunchroom because lying on the machine was a safety violation.

10. Tharco subsequently suspended Plaintiff pending investigation.

11. During the investigation, HR Business Partner I, Eliset Lima, interviewed Plaintiff multiple times. Plaintiff said he was just resting with his eyes closed, but he later stated that he "snoozed off." Plaintiff also told Lima that he lay on machines in the plant "a hundred times," but said that no supervisor ever saw him do so to his knowledge.

LITTLER MENDELSON, P.C.
1100 Superior Avenue
20th Floor
Cleveland, OH 44114
216.696.7600

3.

FINDINGS OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

12. Tharco concluded that Plaintiff's conduct constituted a violation of its LOTO policy.

13. While the LOTO policy in effect at the time did not expressly cover lying on machines in the workplace, the intent of the policy is to require machines to be locked out any time an employee places themselves in a position where unexpected start up of the machine would expose the employee to a hazard.

14. Because this was Plaintiff's second LOTO violation within five years, Tharco's LOTO policy mandated his termination. As such, Tharco terminated Plaintiff's employment on July 30, 2013. As explained in the termination notice, Tharco determined that his actions "were not only a serious safety infraction by laying on an elevated conveyor on the production floor but a direct violation of Tharco's Lock Out Tag Out Policy." On the same day it terminated Plaintiff, Tharco also disciplined one of his co-workers for similar misconduct.

15. From 2010 through his termination, Plaintiff applied for three intermittent leaves of absence and a one month continuous leave of absence under the Family and Medical Leave Act ("FMLA") by submitting Certification of Health Care Provider paperwork. Tharco approved all of Plaintiff's requests for medical leave.

16. On June 20, 2012, Plaintiff requested leave for arthritis in his knees and gout. On August 17, 2012, Plaintiff provided Tharco with a Certification of Health Care Provider form in support of his request, certifying the need for an intermittent leave of absence from July 3, 2012 until July 3, 2013, for a "serious chronic medical condition."

17. Plaintiff's physician estimated that Plaintiff would need to be absent from work due to episodic flare-ups four times per month. Based on the physician's certification, Tharco approved the requested leave and informed Plaintiff that he could take four days of intermittent leave per month.

LITTLER MENDELSON, P.C.
1100 Superior Avenue
20th Floor
Cleveland, OH 44114
216.696.7600

4.

FINDINGS OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

18.     Tharco told Plaintiff that if he needed more than four days per month, he needed to provide additional medical documentation.  Plaintiff, however, never provided additional medical documentation.

19.     On February 5, 2013, Plaintiff received verbal and written warnings for excessive absences.  Because Plaintiff failed to provide additional medical documentation, five months later, on July 1, 2013, Plaintiff received a three day suspension for two additional non-FMLA absences.

20.     Plaintiff asserts that Tharco discriminated against him on the basis of his gout, back, and knee conditions.

21.     Plaintiff has suffered from gout since approximately 2011.  When he experiences flare-ups it is painful for Plaintiff to walk and he has to walk on the side of his foot, but he is still able to walk.  The gout does not impact any of Plaintiff's activities, other than necessitating that he walk on the side of his foot at times.

22.     Plaintiff believes he was diagnosed with knee arthritis in 2012.  The arthritis causes Plaintiff to limp, but it does not prevent him from performing any of his daily activities.

23.     Although Plaintiff has suffered from back pain for "about 25 years," it does not limit any of his activities.

24.     Plaintiff never had any work-related restrictions due to these conditions other than (1) temporary restrictions due to his back condition from September 27, 2010 through October 17, 2010 and (2) a limit on his ability to work more than ten hours per day, one day per week in 2012 and 2013.

25.     Prior to his termination, Plaintiff never filed for disability benefits, and he did not consider himself to be disabled.  Although he received disability benefits following his termination, Plaintiff admits he was still able to work, but applied for disability benefits because he "needed money."

5.

FINDINGS OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

LITTLER MENDELSON, P.C.
1100 Superior Avenue
20th Floor
Cleveland, OH 44114
216.696.7600

26. Plaintiff concedes that no one at Tharco, to his knowledge, made any comments about his medical conditions or derogatory comments about him. Plaintiff never complained that Tharco treated him unfairly due to his medical conditions.

27. Plaintiff admits he routinely worked ten to twelve hour shifts up to sixty hours per week.

## CONCLUSIONS OF LAW

1. Summary judgment must be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

### A. DISABILITY DISCRIMINATION UNDER THE FEHA.

2. In analyzing discrimination claims on summary judgment, California courts apply the *McDonnell Douglas* burden-shifting framework. *Guz v. Bechtel Natl., Inc.*, 24 Cal. 4th 317, 354 (2000).

3. To meet his initial burden, Plaintiff must first establish a *prima facie* case by showing that he 1) suffered from a disability; 2) was otherwise qualified to do the job; and 3) was subjected to an adverse employment action because of the disability. *Diaz v. Federal Express Corporation*, 373 F.Supp.2d 1034 (C.D. Cal. 2005).

4. Section 12926(K) defines physical disability as any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that affects a significant body system and limits a major life activity. A condition limits a major life activity if it makes the achievement of the major life activity difficult. Cal. Gov. Code § 12926(k)(1)(B)(ii).

5. A major life activity may include physical, mentality and social activities, and working. Cal. Gov. Code § 12926(k)(1)(B)(iii).

6. Plaintiff's claim for disability discrimination under the FEHA fails because he cannot state a *prima facie* case because he was not disabled – he did not suffer from a condition that limited his major life activities nor did he have a record of such a condition and he lacks evidence that Tharco regarded him as disabled. Plaintiff

LITTLER MENDELSON, P.C.
1100 Superior Avenue
20th Floor
Cleveland, OH 44114
216.696.7600

repeatedly testified that his alleged disabilities do not limit his major life activities, including working.  Plaintiff also testified that he did not consider himself to be disabled during his employment with Tharco.  Throughout his employment, Plaintiff admits that he routinely worked 10 to 12 hour shifts up to 60 hours per week.  Further, Plaintiff testified that he applied for disability benefits following his termination only because he needed the money.  On these facts, no reasonable jury could conclude that Plaintiff is disabled.

7. Further, Plaintiff has failed to produce evidence that he has a record of a disability under Section 12226(m)(3), particularly as his record merely describes the same ailments that Plaintiff describes as non-disabilities.  Plaintiff has also failed to produce evidence that Tharco regarded him as disabled.

8. Plaintiff's claim for disability discrimination under the FEHA also fails because he cannot state a *prima facie* case because he lacks evidence demonstrating a causal connection between his alleged disabilities and his termination and discipline.

9. Even if Plaintiff could establish a *prima facie* case, the burden then merely shifts to Tharco to set forth nondiscriminatory reasons for the alleged adverse employment actions. *Guz,* 24 Cal. 4th at 355-356.  Doing so transfers the burden back to Plaintiff to demonstrate specific facts establishing that Tharco's reasons are a pretext for unlawful discrimination. *Horn v. Cushman & Wakefield Western, Inc.*, 72 Cal. App. 4th 798, 807 (1999).  The burden to prove intentional discrimination, however, remains at all times with Plaintiff. *Guz,* 24 Cal. 4th at 356.

10. Plaintiff's claim for disability discrimination under the FEHA fails because Tharco had legitimate, non-discriminatory reasons for terminating his employment and disciplining him, specifically, for policy violations including his lying on a bundle conveyor without locking and tagging it out and his failure to provide recertification of his need for medical leave beyond the estimate set forth in his initial certification form.

11. To rebut Tharco's legitimate, non-discriminatory reasons for its actions,

LITTLER MENDELSON, P.C.
1100 Superior Avenue
20th Floor
Cleveland, OH  44114
216.696.7600

Plaintiff must prove that the stated reasons are a pretext for unlawful discrimination. *Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1453 (2002). To establish pretext, Plaintiff must present both specific and substantial evidence rebutting the legitimate business reasons. *U.S. v. Hunt Wesson, Inc.*, 150 F. 3d 1216, 1222 (9th Cir. 1998); *Horn*, 72 Cal. App. 4th at 807.

12. Plaintiff's claim for disability discrimination under the FEHA fails because he cannot produce any specific, substantial evidence that Tharco's stated reasons for his termination and discipline are pretextual.

### B. FAILURE TO ACCOMMODATE AND ENGAGE IN INTERACTIVE DIALOGUE UNDER THE FEHA.

13. To establish a *prima facie* case of failure to accommodate, Plaintiff must prove: (1) he is disabled under the FEHA; (2) he is a qualified individual who can perform the essential functions of the position; and (3) Tharco failed to reasonably accommodate his disability. *Scotch v. Art Institute of California*, 173 Cal. App. 4th 986 (2009); *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 256 (2000).

14. Plaintiff's failure to accommodate claim and failure to engage in a good faith interactive process claim under the FEHA fail because, as discussed above, he was not disabled.

### C. RETALIATION UNDER FEHA/CFRA.

15. Under California law, retaliation claims are subject to the same *McDonnell Douglas* burden shifting analysis applied to discrimination claims under the FEHA. To establish a *prima facie* case of retaliation, Plaintiff must show: (1) protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Miller v. Dept. of Corrections*, 36 Cal.App.4th 446 (2005); *Dudley v. Department of Transportation*, 90 Cal. App. 4th 255, 261 (2001); *Flait v. North American Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992). If Plaintiff establishes a *prima facie* case, Tharco must articulate a legitimate, nonretaliatory explanation for its actions. *Id*. The burden then shifts back to Plaintiff

8.
FINDINGS OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW
LITTLER MENDELSON, P.C.
1100 Superior Avenue
20th Floor
Cleveland, OH 44114
216.696.7600

to show that Tharco's proffered explanation is merely a pretext for illegal conduct. *Id.*

16. Plaintiff's retaliation claims fail because he cannot state a *prima facie* case, insofar as he lacks evidence demonstrating a causal nexus between his requests for medical leave and accommodation and his termination and discipline.

17. Plaintiff's retaliation claims fail because Tharco had legitimate, non-discriminatory reasons for terminating his employment and disciplining him, specifically, for policy violations including his lying on a bundle conveyor without locking and tagging it out and his failure to provide recertification of his need for medical leave beyond the estimate set forth in his initial certification form.

18. Plaintiff's retaliation claims fail because he cannot produce any specific, substantial evidence that Tharco's stated reasons for his termination and discipline are pretextual.

### D.   VIOLATION OF CFRA.

19. To state a claim for interference under the California Family Rights Act ("CFRA"), Plaintiff must prove (1) an entitlement to the right claimed, (2) and some adverse action by the employer that interfered with the right to CFRA leave; and (3) the employer's action was related to the exercise or attempted exercise of CFRA rights. *Faust*, 150 Cal. App. 4th at 879; Cal. Gov. Code § 12945.2(t).

20. The regulations interpreting the CFRA provide that "[u]pon expiration of the time period the health care provider originally estimated that the employee needed for his/her own serious health condition, the employer may require the employee to obtain recertification if additional leave is requested." 2 Cal. Code Regs. § 11091(b)(2). Additionally, the CFRA gives an employer the right to seek recertification on "a reasonable basis" when additional leave is needed. Cal. Gov. Code 12945.2(k). Hence, employers have the right to obtain recertification if the employee exceeds the estimated amount of leave needed.

21. Plaintiff's claim for interference under the CFRA fails because he cannot prove that Tharco unlawfully interfered with any rights given to him by the CFRA,

LITTLER MENDELSON, P.C.
1100 Superior Avenue
20th Floor
Cleveland, OH 44114
216.696.7600

9.

FINDINGS OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

nor can he prove that Tharco retaliated against him for taking medical leaves of absence. Rather, Plaintiff was disciplined for taking leave in excess of that permitted by his own doctor without providing Tharco with additional medical documentation to substantiate his need for leave beyond that set forth in his FMLA certification form.

### E. FAILURE TO PREVENT DISCRIMINIATION UNDER THE FEHA.

22. There can be no claim for failure to prevent discrimination without first establishing an underlying claim for discrimination. *Trujillo v. North Co. Transit Dist.*, 63 Cal.App.4th 280, 286 (1998). "There is no logic that says an employee who has not been discriminated against can sue an employer for not having a policy to prevent discrimination when no discrimination occurred." *Id.* at 289.

23. Plaintiff's claim for failure to prevent discrimination under the FEHA fails because his underlying disability discrimination claim fails.

Dated: March 4, 2015

_____
HONORABLE MANUEL L. REAL
UNITED STATES DISTRICT JUDGE

LITTLER MENDELSON, P.C.
1100 Superior Avenue
20th Floor
Cleveland, OH 44114
216.696.7600

10.

FINDINGS OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW